UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Adam Joseph Demers, | ) | Civil Action No. 5:12-02742-SB-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| Carolyn W. Colvin,[1] Acting Commissioner | ) | |
| of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and 5 U.S.C. § 706 to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to the Social Security Act ("the Act"). For the reasons that follow, the undersigned recommends that the Commissioner's decision be affirmed.

I.  Relevant Background

A.  Procedural History

In November 2009, Plaintiff filed applications for DIB and SSI alleging a disability onset date of October 8, 2007. Tr. 121-32. After being denied both initially and on reconsideration, Tr. 59-62, on July 28, 2010, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), Tr. 87-88. On January 21, 2011, the ALJ conducted a hearing, taking testimony from

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the court substitutes Carolyn W. Colvin for Michael J. Astrue as Defendant in this action.

Plaintiff. Tr. 28-54. At the hearing, Plaintiff amended his alleged onset date to November 4, 2009. Tr. 31. The ALJ issued a decision on February 4, 2011, denying Plaintiff's claims. Tr. 11-22. The Appeals Council subsequently denied his request for review, thereby making the ALJ's decision the Commissioner's final administrative decision for purposes of judicial review. Tr. 1-3. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on September 21, 2012. ECF No. 1.

### B. Plaintiff's Background and Medical History

#### 1. Background

Plaintiff, born on July 9, 1980, was 29 years old as of his amended alleged onset date, and 30 years old when the ALJ rendered his decision. Tr. 30, 123. He graduated from high school with a certificate instead of a diploma because he was in special education classes. Tr. 31. Plaintiff's prior work history includes grounds maintenance, logging deck man, heavy equipment operator, dredging deckhand, and customer assistance in the Wal-Mart lawn and garden department. Tr. 182-87. Plaintiff initially alleged that he became disabled on October 8, 2007, due to severe back pain, but was given light duty work until November 3, 2009. Tr. 191. At the hearing, Plaintiff amended his alleged onset date to November 4, 2009. Tr. 31.

#### 2. Relevant Medical History

##### a. 2007-2008

On October 6, 2007, Plaintiff was seen at Walterboro Family Practice Associates complaining of pain in his right shoulder and back sustained in a fall from a trailer. Tr. 280. Plaintiff was diagnosed with contusions and sprains, prescribed Flexeril for spasms and Orudis, instructed to apply ice and then switch to heat, and return if the pain did not resolve. *Id.* Plaintiff

returned for follow-up on October 11, 2007, stating that he was "still hurting quite a bit." *Id.* The diagnosis remained sprains, and Plaintiff was continued on his prescribed medication. *Id.*

Dr. Edward R. Blocker, of Lowcountry Medical Group, examined Plaintiff on November 18, 2008, for follow-up of the MRI of Plaintiff's right shoulder and lumbar spine. Tr. 304. The lumbar spine MRI indicated "disc desiccation at L5-S1 but no herniated discs, neural impingement or stenosis." *Id.* The MRI of the right shoulder indicated a mass "consistent with an osteochondroma with a thin cartilage cap, no obvious destructive lesions." *Id.* Dr. Blocker did not "see any indication for surgery," but did recommend formal physical therapy for Plaintiff's shoulder and lumbar spine. *Id.*

### b. 2009

Plaintiff was seen by Dr. Michael R. Smith of Walterboro Family Practice Associates on January 23, 2009, complaining of severe anxiety. Tr. 335. He also complained of right-sided breast swelling. *Id.* After examination, Dr. Smith assessed Plaintiff with generalized anxiety disorder and gynecomastia. *Id.* Dr. Smith recommended a mammogram/ultrasound of the breast, and prescribed Xanax 0.25 mg. *Id.* Plaintiff returned on January 30, 2009, for follow-up. Tr. 333. Plaintiff indicated the Xanax helped, but noted he was taking two at a time. *Id.* Dr. Smith indicated he would increase the dosage when the next refill was due, and spent 15 minutes counseling Plaintiff on dietary options regarding his obesity. *Id.* Plaintiff returned for follow-up on February 10, 2009, for right breast pain. Tr. 331. The ultrasound confirmed gynecomastia, and Dr. Smith planned to consult general surgery. *Id.*

Plaintiff returned for follow-up to Dr. Blocker on February 23, 2009, and stated that his shoulder pain was resolved, however he still had "a little bit of discomfort in his low back." Tr. 303. Plaintiff requested a prescription for a home TENS unit. *Id.* Plaintiff also stated that he

needed "very specific work restrictions." *Id.* Dr. Blocker indicated Plaintiff would need to go through a Functional Capacity Evaluation ("FCE") for a work note. *Id.*

Plaintiff underwent an FCE with Select Physical Therapy on March 12, 2009. Tr. 306-14. The conclusion indicated that Plaintiff "did not demonstrate ability to perform the full duty job requirements of a maintenance worker in recreation department," and was "unable to demonstrate ability to perform the required occasional lift or carry of 50 pounds." Tr. 306. Plaintiff also "demonstrated limitations in his tolerance to stair climbing, walking, balancing, and stooping which did not meet the required full duty job description." *Id.* Plaintiff's physical demand level was noted as "medium." *Id.*

Plaintiff returned to Dr. Blocker on March 23, 2009, for follow-up of his FCE. Tr. 302. Dr. Blocker noted Plaintiff's work restrictions included occasional floor-to-waist lifting of no more than 40 pounds, frequent floor-to-waist lifting of 30 pounds, occasional overhead lifting of 35 pounds, frequent overhead lifting of 25 pounds, and occasional two-hand carrying limited to only 20 pounds. *Id.* Dr. Blocker opined that Plaintiff was at maximum medical improvement ("MMI") with the noted restrictions, and estimated Plaintiff's impairment at 5% whole person based on the Guides of Evaluation and Permanent Impairment category for lumbosacral spine impairment. *Id.*

Plaintiff returned to Dr. Smith of Walterboro Family Practice Associates on April 20, 2009, complaining of left heel pain. Tr. 338. Plaintiff also indicated that the Xanax 0.25 mg helped but he had "periods of increased anxiety and feels that the medication should be increased." *Id.* Dr. Smith assessed Plaintiff with plantar fasciitis and generalized anxiety disorder, and prescribed Sulindac 200 mg and increased the Xanax prescription to 0.5 mg. *Id.*

Plaintiff returned on June 10, 2009, complaining that his left ankle was hurting and swollen. Tr. 336. He was assessed with ankle sprain, prescribed EC-Naprosyn 500 mg, and instructed to do "warm soaks" and "elevation." *Id.*

Dr. J. Robert Alexander, Jr. of Spine & Orthopaedic Specialists of South Carolina PA, performed an Independent Medical Examination ("IME") of Plaintiff on July 29, 2009. Tr. 321-24. Dr. Alexander recommended an L5-SI lumbar epidural under fluoroscopy "in hopes of resolving ongoing symptomatic complaints." Tr. 324. Dr. Alexander also recommended Plaintiff "continue medium duty work status with lifting not to exceed 30 pounds without assistance." *Id.* Plaintiff returned on September 22, 2009, for consultation for initial evaluation status post-IME. Tr. 319. Plaintiff noted that a lumbar injection on September 10, 2009, was beneficial and he was "at least 75% improved." *Id.* Dr. Alexander continued Plaintiff on medium-duty work status with lifting not to exceed 30 pounds without assistance. Tr. 320.

An office note from Walterboro Family Practice dated November 17, 2009 indicated that Plaintiff was seen for "a disability evaluation to go over what he can do in training." Tr. 327. The report indicated Plaintiff had a complete evaluation and was tested for climbing and lifting and his neurosurgeon recommended that he not lift over 30 pounds for any length of time, and he could occasionally climb stairs. *Id.* Plaintiff indicated he was "comfortable" with the disability limitations discussed. *Id.*

An unsigned and undated Medical Release/Physician's Statement questionnaire noted that Plaintiff's disability was "permanent," but that he was able to work full time.[2] Tr. 329. The statement noted Plaintiff could sit four hours per workday, stand and walk for two hours, occasionally climb stairs/ladders, and keyboard for four hours. *Id.* The questionnaire noted zero

---

[2] The ALJ and Plaintiff attribute this Statement to Dr. Michael Smith. *See* Tr. 20; Pl.'s Br. 19, ECF No. 22.

for kneeling/squatting, bending/stooping, pushing/pulling, and lifting/carrying. *Id.* However, the questionnaire also noted Plaintiff may not lift/carry objects more than 30 pounds for more than two hours per day. *Id.*

### c. 2010

On January 6, 2010, consultant Olin Hamrick, Jr., PhD completed a Psychiatric Review Technique form ("PRTF") for an assessment from November 3, 2009 to January 6, 2010. Tr. 344-57. The medical disposition was for a nonsevere impairment based on anxiety-related disorders. Tr. 344. Hamrick found that under the "B" criteria of the Listings, Plaintiff had no limitations in the areas of Restriction of Activities of Daily Living ("ADLs"); Difficulties in Maintaining Concentration, Persistence, or Pace; and no Episodes of Decompensation. Tr. 354. He noted Plaintiff had mild limitations in Difficulties in Maintaining Social Functioning. *Id.* Hamrick noted the evidence did not establish the presence of the "C" criterion. Tr. 355. Hamrick noted findings from Walterboro Family Practice of generalized anxiety disorder on January 23, 2009, and April 20, 2009. Tr. 356. Hamrick further noted that Plaintiff was "able to take children to school, work, assist with homework, fix meals, manage his [and] children's personal hygiene, clean, drives, shops, manages finances, plays with children, and visits with family." *Id.*

On January 7, 2010, Joseph Gonzalez, MD, a non-examining state agency physician, reviewed the record and assessed Plaintiff's physical residual functional capacity ("RFC"). Tr. 358-65. Dr. Gonzalez found that Plaintiff was capable of lifting and carrying 50 pounds occasionally and 25 pounds frequently, walking/standing at least six hours in an eight-hour workday (with normal breaks), sitting about six hours in an eight-hour workday (with normal breaks), and had no limitations for pushing or pulling other than the lift and carry restrictions. Tr. 359. He also found Plaintiff could frequently climb ramp/stairs, occasionally climb

ladder/rope/scaffolds, and could frequently balance, stoop, kneel, crouch, and crawl. Tr. 360. Dr. Gonzalez found no manipulative, visual, communicative, or environmental limitations. Tr. 361-62. He concluded that Plaintiff's "allegations of severe pain, and inability to lift/bend/carry/walk for long periods of time are partially credible but based on most recent exams would not limit the claimant for a wide range of medium work. The allegation of sleep problems are not credible based on no medical evidence to support the allegation." Tr. 363. With regard to Plaintiff's physical capacities, Dr. Gonzalez referenced the September 22, 2009 statement of Dr. Alexander that Plaintiff was to continue medium duty work status with lifting not to exceed 30 pounds without assistance. Dr. Gonzalez gave this opinion "great weight as this is the treating doctor." Tr. 364. Dr. Gonzalez also referenced the November 17, 2009 statement from Walterboro Family Practice noting that the neurosurgeon recommended Plaintiff "not lift over 30 pounds for any length of time and he can occasionally climb stairs." *Id.* Dr. Gonzalez gave this opinion "controlling weight as this is the PCP." *Id.* Dr. Gonzalez also cited to opinions from Spine & Orthopaedic Specialists, Walterboro Family Practice, and Lowcountry Medical Group related to Plaintiff's allegations of lower back problems, arthritis in neck, sleep apnea, and gout. Tr. 365.

On April 20, 2010, Plaintiff went to Walterboro Adult and Pediatric Medicine complaining of back pain, and a numbing feeling in both arms. Tr. 368. The notes indicate that Plaintiff wanted to have lap band surgery. *Id.* Celine Rivers, FNP, referred Plaintiff to Dr. Burns for bariatric surgery. Tr. 369.

On May 27, 2010, consultant Camilla Tezza, PhD completed a second PRTF on Plaintiff. Tr. 371-84. The medical disposition was for a nonsevere impairment based on anxiety-related disorders. Tr. 371. Tezza found that under the "B" criteria of the Listings, Plaintiff had no functional limitations. Tr. 381. Tezza noted the evidence did not establish the presence of the

"C" criterion. Tr. 382. Tezza noted that Plaintiff's allegation was "partially credible as anxiety reported in the MER." Tr. 383. Tezza further noted that there was no diagnosis of depression in the available medical record, and "recent contact with the [Plaintiff] indicated that his reported depression was situational and relatively brief. Significant limitations in function are attributed, by the [Plaintiff], to his reported physical condition." *Id.*

On June 16, 2010, medical consultant Cleve Hutson, MD assessed Plaintiff's physical RFC. Tr. 385-92. Dr. Hutson opined that Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry ten pounds, that he was able to stand and/or walk for six hours in an eight-hour workday (with normal breaks), sit about six hours in an eight-hour workday (with normal breaks), and had no limitations for pushing or pulling other than the lift and carry restrictions. Tr. 386. Dr. Hutson also found Plaintiff could frequently climb ramp/stairs, occasionally climb ladder/rope/scaffolds, and could frequently balance, stoop, kneel, crouch, and crawl. Tr. 387. Dr. Hutson found no manipulative, visual, communicative, or environmental limitations. Tr. 388-89. Regarding the severity of Plaintiff's symptoms, Dr. Hutson concluded that Plaintiff's "allegations of severe pain, and inability to lift/bend/carry/walk for long periods of time are partially credible but based on most recent exams would not limit [Plaintiff] from a wide range of light exertion. The allegation of sleep problems are not credible based on no medical evidence to support the allegation." Tr. 390. Dr. Hutson noted that he considered and agreed with the recommendations of Dr. Alexander dated September 22, 2009, and Walterboro Family Practice, dated November 17, 2009, and opined that the "current RFC reflects morbid obesity's influence on [Plaintiff's] ability to function." Tr. 391.

A doctor from Walterboro Adult & Pediatric Medicine completed a questionnaire regarding Plaintiff's mental condition on July 1, 2010. Tr. 395. In response to the questions

regarding Plaintiff's mental diagnosis and prescribed medications, the response was "none." *Id.* responses for mental status indicated orientation: all; thought process: intact; thought content: appropriate; mood/affect: normal; attention/concentration: good; and memory: good. *Id.* In response to the question whether Plaintiff exhibited "any work-related limitation in function due to the mental condition" the doctor circled "serious" but also responded that Plaintiff was capable of managing his funds. *Id.*

On July 8, 2010, Plaintiff presented to the Emergency Department of Colleton Medical Center complaining of back pain and chronic back pain with onset two days prior. Tr. 408-14. The pain was described as moderate and located in the area of "right flank and right lower lumbar spine and radiating to the right groin." Tr. 408. Plaintiff noted the pain was "worsened by bending over" and the possibility that the injury occurred at home while "he was turning." *Id.* Plaintiff was discharged with instructions to follow-up with Dr. Goulding for evaluation of possible kidney stone; and prescribed Lortab 5 mg to take as needed for pain, Cipro 500 mg, and Pyridium 200 mg for urinary problems. Tr. 410-11.

Plaintiff went to Walterboro Adult & Pediatric Medicine on July 9, 2010, complaining that on the previous day he had pain in his upper right back with pain going into right testicle. Tr. 402. He was seen by Mary Bowen, FNP, and was assessed with hematuria, right flank/groin pain, high BMI, and chronic lower back pain. *Id.* FNP Bowen instructed Plaintiff to continue Cipro, increase fluids, stay out of the sun, and follow-up with the doctor as scheduled. *Id.*

On August 2, 2010, Dr. Mike O. Tyler of Neurological Surgery submitted a report from an examination he conducted on Plaintiff upon referral of Dr. John Creel of Walterboro Adult & Pediatric Medicine. Tr. 403-05. Dr. Tyler noted that Plaintiff was morbidly obese, and in reviewing Plaintiff's MRI scan Dr. Tyler noted no "significant ruptured disc or neurosurgical

lesions which [he] could advise the patient to have surgery for." Tr. 404. Dr. Tyler opined that Plaintiff "primarily has mechanical back pain due to his obesity and his multiple injuries." *Id.* Dr. Tyler stated that Plaintiff could try to lose weight with diet and exercise alone, but thought "it would be a good idea to refer him to the bariatric surgery division at the Medical University for evaluation." *Id.* Dr. Tyler stated that he would be reluctant to consider any surgery on Plaintiff until his "obesity has resolved for fear of making his back more mechanically unstable with surgery." *Id.*

Plaintiff returned to Walterboro Adult & Pediatric Medicine on August 3, 2010, still complaining of chronic back pain, but noting that the flank and groin pain "went away [with antibiotics] last [month]." Tr. 401. FNP Bowen noted that Plaintiff was scheduled for an MRI on August 11, 2010. *Id.* Plaintiff was seen for his one-month follow-up on September 1, 2010 by Dr. John Creel. Tr. 400. At Plaintiff's follow-up appointment on October 5, 2010, Dr. Creel assessed Plaintiff with chronic back pain and obesity, but noted that he was doing well with weight loss and had lost 12 pounds the last month. Tr. 399. Plaintiff was seen again for follow-up on November 4, 2010, and December 6, 2010. Tr. 397-98.

### 3. The Administrative Hearing

Plaintiff and his counsel appeared at his administrative hearing on January 21, 2011. *See* Tr. 28-54. Plaintiff testified that he was 30 years old, separated from his wife, and lived with his three children ages nine, eight, and five. Tr. 30. Plaintiff amended his alleged onset date of disability to November 4, 2009, and testified that he had not worked since that date. Tr. 31. Prior to the alleged onset date Plaintiff worked for eight months doing light duty work on a temporary basis at his job in a solid waste facility. Tr. 32. That work consisted primarily of pushing a button on a trash compactor and instructing people where to throw their trash. *Id.* Plaintiff was working

light duty because of injuries sustained in an automobile accident. *Id.* Plaintiff testified that he injured his right shoulder, lower lumbar, and he has two bulging discs in his back. Tr. 33. Plaintiff testified that the doctor wanted him to lose weight before doing any surgery on his back, and wanted Plaintiff to get "back down to around 230." Tr. 34. Plaintiff stated that he was five-feet, nine-inches tall, and currently weighed 364 pounds, which was a reduction from his previous weight of 420 pounds. *Id.* Plaintiff considered having lap band surgery, but after weighing the risks, opted to try to lose the weight with appetite-suppressant medication. Tr. 35. Plaintiff's past work consisted of maintenance worker, heavy equipment operator, deck man, and customer service in lawn and garden department of Wal-Mart. Tr. 36-37. Plaintiff testified that he had a small pain in his right shoulder, but most of his pain was in his lower back. Tr. 37-38. Plaintiff stated that the pain would sometimes go down his leg to his knee. Tr. 39. Plaintiff stated that he could walk for about ten or 15 minutes before needing to stop due to sharp pain in his lower back. Tr. 40. Plaintiff stated that the pain would ease if he stopped and leaned over on something. *Id.* Plaintiff also stated that he would have to lie down for about 30 minutes once or twice a day. *Id.*

Plaintiff testified that he was fired from one job because of sleeping at work and that he had been diagnosed with sleep apnea. Tr. 42. Plaintiff stated that he uses a CPAP machine every night. *Id.* Plaintiff stated that he had three injections in his back, but they helped for only about one week and the pain would return. Tr. 45. Plaintiff testified that he drives some, but "just to go to the store or grab something quick or something." Tr. 47. Plaintiff stated that his older children help with household chores, as do Plaintiff's mother and siblings. Tr. 48-49. Plaintiff testified that he goes fishing sometimes, but it was limited by the pain from standing or sitting too long.

Tr. 51-52. Plaintiff stated that because of his condition he was unable to do things with his children like he used to do. Tr. 53.

II. Discussion

    A. The ALJ's Findings

In his February 4, 2011, decision, the ALJ made the following findings of fact and conclusions of law:

1.     The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2.     The claimant has not engaged in substantial gainful activity since November 4, 2009, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

3.     The claimant has the following severe impairments: obesity and degenerative disc disease (20 CFR 404.1520(c) and 416.920(c)).

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). Specifically, the claimant is able to lift and carry up to 10 pounds occasionally and lesser amounts frequently, sit for 6 hours in an 8-hour day, and stand and walk occasionally. However, the claimant can only perform climbing and overhead reaching occasionally.

6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.     The claimant was born on July 9, 1980 and was 29 years old, which is defined as a younger individual age 18-44, on the amended alleged disability onset date (20 CFR 404.1563 and 416.963).

8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969 and 416.969(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from October 8, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 13-22.

## B.  Legal Framework

### 1.  The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims).  An examiner must consider the following:  (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the

Listings;[3] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520, § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) and § 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); § 416.920(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the

---

[3] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii); § 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; § 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146. n.5 (regarding burdens of proof).

### 2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 428 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *See Vitek v. Finch*, 428 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner,

that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

C. Analysis

Plaintiff argues that the ALJ erred by: (1) failing to properly assess the treating physician's opinions; (2) failing to obtain vocational expert ("VE") testimony; and (3) failing to explain his findings regarding Plaintiff's RFC. Pl.'s Br. 15-29, ECF No. 22.

1. Consideration of the Opinion of Dr. Smith

Plaintiff's first allegation of error is that although the ALJ correctly accorded Dr. Smith's opinion "significant weight," he incorrectly found that "Dr. Smith's assessment was essentially the same as the RFC assessment indicated in the hearing decision." Pl.'s Br. 19. Plaintiff argues that the ALJ did not consider the restrictions imposed by Dr. Smith with regard to Plaintiff's ability or inability to stoop, his sitting restriction, or his ability or inability to work a full day at a work station. *Id.* at 19-21. Plaintiff asserts that, under 20 C.F.R. § 404.1512(e),[4] the ALJ should have contacted Dr. Smith for clarification "instead of rejecting or just ignoring any portion of the opinion he found to be confusing." *Id.* at 23. The Commissioner asserts that although the ALJ gave Dr. Smith's opinion significant weight and "incorporated 'certain limitations' found by Dr. Smith into the residual functional capacity assessment," the ALJ did not accord Dr. Smith's opinion controlling weight. Def.'s Br. 15, ECF No. 24. "Because the ALJ gave Dr. Smith's assessment less than controlling weight, the absence of some of the limitations Dr. Smith reported in his opinion does not constitute an inconsistency in the ALJ's decision, as Plaintiff argues." *Id.*

---

[4] 20 C.F.R. § 404.1512(e)(1) was modified effective March 26, 2012, to remove the requirement to recontact a medical source to resolve an inconsistency or insufficiency in the evidence. 77 Fed. Reg. 10651-01 (Feb. 23, 2012). This modification to the regulation was made after Plaintiff filed his claim, and after the ALJ's decision.

The Social Security Administration typically accords greater weight to the opinion of a claimant's treating medical sources, because such sources are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. *See* 20 C.F.R. § 404.1527(c)(2). However, "the rule does not require that the testimony be given controlling weight." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam). The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. §§ 404.1527(d)(2); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d at 178 (citing *Hunter v. Sullivan*, 993 F.2d at 35). Under § 404.1527, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors to determine the weight to be afforded the physician's opinion: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527. Social Security Ruling 96–2p provides that an ALJ must give specific reasons for the weight given to a treating physician's medical opinion. SSR 96–2p.

The ALJ considered the undated statement of Dr. Smith that Plaintiff was permanently disabled but could work full time with restrictions. Tr. 20. He gave Dr. Smith's opinion

significant weight due to the treating relationship, found Dr. Smith's opinion was "essentially consistent with sedentary work," and incorporated certain of Dr. Smith's limitations into the RFC. *Id.* The ALJ found that the RFC for "limited sedentary work" was supported by the medical evidence and by the opinion of Dr. Smith and the state agency psychiatric consultants. Tr. 21. The ALJ noted the following:

> Dr. Smith marked the number "0" beside kneeling/squatting, bending/stooping, pushing/pulling and lifting/carrying. This notation is unclear as whether Dr. Smith restricted the claimant from performing those activities or if Dr. Smith was not denoting an hourly maximum to those movements. Nevertheless, the undersigned accords this opinion significant weight due to the treating relationship between Dr. Smith and the claimant. Additionally, the undersigned notes that this opinion is essentially consistent with sedentary work and certain limitations have been incorporated into the residual functional capacity above.

Tr. 20. The ALJ's decision to reject part of Dr. Smith's opinion contained in an undated questionnaire is supported by substantial evidence. As noted by the ALJ:

> Following a thorough review of the evidence of record, the undersigned finds that the claimant's reports to his treating and examining physicians, as well as findings upon objective examination, are generally inconsistent with the claimant's testimony of such significant complaints of pain and dysfunction. Specifically, the claimant's activities of daily living are inconsistent with his allegations of such significant functional limitations, but are fully consistent with the residual functional capacity described above.

Tr. 18. The ALJ specifically noted Plaintiff's ADLs, including the ability to drive, care for his children, grocery shop, visit with friends and family, fish, and cook simple meals. *Id.* The ALJ "recognize[ed] that childcare, by its very nature, requires a certain degree of lifting, carrying, standing, walking, pushing, pulling, bending, and stooping." *Id.* The ALJ concluded by stating that the RFC for limited sedentary work was "supported by the medical evidence of the claimant's degenerative disc disease and obesity, as well as the opinion of Dr. Smith and the state agency psychiatric consultants, which have been accorded significant weight." Tr. 21. The ALJ found that in light of the inconsistencies in the record, "particularly the relatively limited

and conservative treatment of claimant's symptoms," Plaintiff's claim that he was incapable of all work was not credible. *Id.* The ALJ articulated sufficient reasons for assigning less than controlling weight to the statement by Dr. Smith, and the undersigned recommends this challenge to the ALJ's decision be dismissed.

## 2. Failure to Obtain VE Testimony

Plaintiff argues that the ALJ's use of the Grids to find Plaintiff was not disabled was error because "[w]here non-exertional impairments exist, such as the case at hand, the Grids cannot be applied and the vocational testimony provides the sole means by which the Commissioner meets her burden." Pl.'s Br. 25. Plaintiff asserts that the ALJ's conclusion that the additional limitations on climbing ladders and overhead reaching "'had little or no effect on the occupational base of unskilled work' represents a vocational opinion that the ALJ is not qualified to make, and . . . is simply wrong." Pl.'s Br. 26. Plaintiff argues that "no reasonable interpretation of the evidence submit[ted] could lead to a conclusion that [Plaintiff] had no significant non-exertional impairments, thereby obviating the need for vocational testimony." *Id.* at 27. The Commissioner counters, citing to SSR 83-14, that "contrary to Plaintiff's argument, the presence of a non-exertional limitation does not preclude the use of the Grids." Def.'s Br. 18. The undersigned agrees.

"The term 'occupational base' means the approximate number of occupations that an individual has the RFC to perform considering all exertional and nonexertional limitations and restrictions." SSR 96-9P, 1996 WL 374185, at *3. A nonexertional limitation affects only a claimant's ability to meet the demands of jobs other than strength demands. 20 CFR § 416.969a(c). Nonexertional limitations may include difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentration; difficulty

understanding or remembering detailed instructions; difficulty seeing or hearing; difficulty tolerating some physical features of certain work settings; or difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching. *Id.* Postural limitations "would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work." SSR 96-9P, 1996 WL 374185, at *7. "[A]n ALJ is not always required to consider testimony of a VE in order to find a claimant 'not disabled' when the claimant has both exertional and nonexertional limitations. If Plaintiff's nonexertional limitations have a minimal effect on his exertional occupational base, then a finding directed by the Grids is sufficient, and testimony by a VE is unnecessary." *Boland v. Astrue*, No. 3:08CV798-HEH, 2009 WL 2431536, at *7 (E.D. Va. Aug. 7, 2009) (internal citations omitted). In more complex cases, an ALJ may use a vocational expert to provide an "analysis of the impact of the RFC upon the full range of sedentary work, which the adjudicator may consider in determining the extent of the erosion of the occupational base, examples of occupations the individual may be able to perform, and citations of the existence and number of jobs in such occupations in the national economy." SSR 96-9P, 1996 WL 374185, at *9. The use of a VE is not mandatory.

Here, the ALJ found that Plaintiff had the RFC to perform a sedentary work with specific limitations. Tr. 15. In making his finding regarding the existence of jobs Plaintiff could perform, the ALJ noted that the additional limitations had "little or no effect on the occupational base of unskilled sedentary work," and a finding of "not disabled" under Medical Vocational Rule 201.28 was appropriate. Tr. 22. The undersigned finds that the ALJ did not err by using the Grids to determine whether Plaintiff was disabled.

3. Plaintiff's RFC

Plaintiff alleges finally that the ALJ erred in assessing Plaintiff's RFC by failing to explain his findings as required by SSR 96-8p. Pl.'s Br. 28-29. Specifically, Plaintiff asserts that the ALJ's RFC findings indicate no restrictions in the areas of kneeling, squatting, bending, and stooping, although such restrictions would be reasonably expected given Plaintiff's low back condition in combination with his morbid obesity. Pl.'s Br. 29. The Commissioner disagrees, arguing the ALJ's findings were supported by substantial evidence and based on his evaluation of the entire record. Def.'s Br. 8-9.

The ALJ's RFC limited Plaintiff to sedentary work with the ability to lift and carry up to ten pounds occasionally and lesser amounts frequently, sit for six hours in an eight-hour workday, stand and walk occasionally, and perform climbing and overhead reaching occasionally. Tr. 15. As recounted above, in making his decision the ALJ discussed Plaintiff's ADL's, and stated his RFC assessment was supported by the medical evidence related to Plaintiff's degenerative disc disease and obesity. Tr. 21. The ALJ also noted his consideration of the medical opinions of record, including that of Dr. Smith; the ALJ also noted inconsistencies in the record. *Id.* Specifically, with regard to Plaintiff's back, the ALJ noted the following: an October 2008 MRI of Plaintiff's lumbar spine that showed no evidence of significant lumbar disc protrusion or herniation at any level; Plaintiff's report in February 2009 of good back relief with physical therapy and use of a TENS unit and denial of any radicular type symptoms; in July 2009 Plaintiff exhibited increased pain with lumbar flexion but only mild pain with extension, but all his motor, sensory, and deep tendon reflexes were intact in the lower extremities; in September 2009, Plaintiff received a lumbar epidural steroid injection that he reported was beneficial; November 2009 treatment notes indicated Plaintiff was prescribed 800 mg Ibuprofen for pain; in

April 2010 Plaintiff alleged ongoing back pain, but ambulated with a normal gait, and was prescribed Lortab, Baclofen and Skelaxin; in July 2010 Plaintiff's range of motion in his neck and back were within normal limits and normal in all extremities; and in November 2010, Plaintiff reported he was still experiencing back pain even with medications, but admitted he had not been taking Meloxicam. Tr. 17. With regard to Plaintiff's obesity, the ALJ stated that the treatment notes revealed that "despite his obesity, the claimant was able to move about generally well and sustain consistent function" and his obesity did "not have a negative effect upon the claimant's ability to perform routine movement" beyond the ALJ's limited RFC or his ability to sustain function over an eight-hour day. *Id.* The ALJ discussed inconsistencies in the Plaintiff's hearing testimony and reports to his treating and examining physicians, Plaintiff's failure to follow-up on recommendations of his treating doctor, and treatment notes regarding no prescribed narcotic medication or ambulation-assisting devices. Tr. 18-19. The ALJ then proceeded to discuss and weigh the various opinions of treating physicians, state agency physicians and psychiatric consultants, as well as lay opinions. Tr. 19-20.

Upon review of the record, the ALJ's decision, and the parties' briefs, the undersigned finds Plaintiff's argument that the ALJ did not explain his RFC assessment is without merit. The ALJ properly considered the medical and nonmedical evidence in determining Plaintiff's RFC and adequately explained his findings. Therefore, the ALJ's decision as to Plaintiff's RFC should be upheld.

III. Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the undersigned finds that the Commissioner performed an adequate review of the

whole record, including evidence regarding Plaintiff's physical condition, and that the decision is supported by substantial evidence.

Accordingly, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under Section 1631(c)(3) of the Act, 42 U.S.C. Sections 405(g) and 1383(c)(3), it is recommended that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.


September 30, 2013                                    Kaymani D. West
Florence, South Carolina                        United States Magistrate Judge


**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**